ADDENDUM A

835 Hinesburg, LLC ("835 Hinesburg") applied to develop its property. The City Council denied its application because 835 Hinesburg proposed to develop in an area the City of South Burlington had recently designated as a "Habitat Block." 835 Hinesburg brought a complaint asserting both Takings and Due Process challenges.

On February 7, 2022, the City Council voted to adopt the amendments to the Land Development Regulations. Section 12.04 (F) of the amended regulations completely prevents any use of the area of land designated a Habitat Block: "all lands within a Habitat Block must be left in an undisturbed, naturally vegetated condition." Section 12.04(F) specifically prevents a number of traditional property rights associated with fee simple ownership, including: (1) "the clearing of trees and understory vegetation is prohibited except as specified in this section," (2) "the creation of new lawn areas is prohibited," (3) "Snow storage areas are prohibited." Section 12.04(F) also undermines one of the most traditional and important rights of private property – the right to exclude. 835 Hinesburg cannot erect a fence to exclude either humans or wild animals under Section 12.04(F). Section 12.04(H) also prohibits development in the Habitat Block: "The encroachment of new development activities into, and the clearing of vegetation, establishment of lawn, or other similar activities in Habitat Blocks is prohibited." The broad language of the LDRs prohibits any manner of uses including the fundamental right to exclude others from entering your property. The prohibition on "disturbing" the land prevents a property owner from even walking his or her land for fear of disturbing animals.

On November 8, 2021, the City Council denied 835 Hinesburg the opportunity to develop the property by saying that the Property did not meet the proposed new regulations. As part of its decision, the City Council relied on the fact that some of the proposed development was located within a Habitat Block.

835 Hinesburg filed a Complaint asserting claims under the Takings Clause and the Due Process Clause of the United States Constitution. The District Court dismissed the case without prejudice as not satisfying the ripeness requirements of *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page2 of 62

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 JAN 27  AM 9: 34

CLERK

BY_____
DEPUTY CLERK

835 HINESBURG ROAD, LLC,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)　　　Case No. 5:22-cv-58
　　　　　　　　　　　　　　　　　)
CITY OF SOUTH BURLINGTON,　　　　)
SOUTH BURLINGTON CITY COUNCIL,　)
MEAGHAN EMERY, TIMOTHY　　　　　 )
BARRITT, and HELEN RIEHLE,　　　 )
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　 )

**ORDER ON MOTION TO DISMISS**
**(Doc. 4)**

This case concerns federal constitutional and state law challenges to land use regulations recently adopted by the City Council of South Burlington, Vermont. The regulations designate portions of certain parcels of land in South Burlington as "Habitat Blocks," and limit development thereon to preserve open space for a variety of reasons. Plaintiff owns a 113.8-acre parcel of undeveloped property in South Burlington, portions of which are designated as Habitat Blocks. Plaintiff objects to having certain portions designated as "Habitat Blocks" and alleges that the designation prevents it from using the property as it wishes or developing it in the future.

Plaintiff's primary claim is an inverse condemnation claim—that in enacting its land use regulations, South Burlington has taken property rights without compensation in violation of the Fifth Amendment to the United States Constitution (Count One). Plaintiff also asserts federal constitutional claims under the Due Process Clause and Equal Protection Clause (Counts Two & Four). In addition, Plaintiff makes similar claims under the Vermont Constitution, including under the Takings, Due Process, and Common Benefits clauses of the Vermont Constitution (Counts One–Three). Separate from the constitutional claims, Plaintiff asserts a declaratory

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page3 of 62

ruling under state law that South Burlington "lacked legal authority to designate Plaintiff's land as a "Habitat Block" under "the state statute creating forest blocks" (Count Five). (Doc. 1 ¶ 155.) Plaintiff also makes a claim under municipal law that one of the city councilors who voted to adopt the regulations should have disqualified herself because she was employed by the University of Vermont which received favorable treatment under these provisions (Count Six). Lastly, Plaintiff claims that South Burlington "discriminated against 835 Hinesburg in creating the new zoning district, especially when combined with the Habitat Block zoning changes" (Count Seven). (Doc. 1 ¶ 164.) The complaint does not state whether this is a federal or a state law claim. (*See id.*)

Defendants filed a motion to dismiss all seven counts in the complaint. (Doc. 4.) For the reasons that follow, the court grants Defendants' motion.

## **Factual Background**

The court draws the following facts from the complaint, the exhibits attached to the parties' memoranda, and certain publicly available information.[1] These exhibits consist of public records such as the South Burlington City Council's Decision regarding Plaintiff's Interim Zoning Application (Doc. 5-2), the South Burlington Development Review Board's ("DRB") decision on Plaintiff's sketch plan application (Doc. 5-3), and the South Burlington Interim Bylaws at issue here (Doc. 9-1). In addition, the court draws from the Land Development

---

[1] In ruling on a 12(b)(6) motion to dismiss, a court may consider the complaint, any writing attached to it as an exhibit, any statements or documents incorporated in the complaint by reference, and matters that may be judicially noticed. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page4 of 62

Regulations ("LDRs") formally adopted by the South Burlington City Council on February 7, 2022 and the LDRs in effect prior to that.[2]

## I.    Interim Bylaws and Amended Land Development Regulations

On November 13, 2018, the South Burlington City Council adopted Interim Zoning Bylaws. (Doc. 1 ¶ 27; Doc. 9-1.) Interim Zoning ("IZ") is permitted by 24 V.S.A. § 4415(a). The statute authorizes a municipality to adopt interim bylaws for a maximum of three years while it considers revisions to its zoning bylaws or municipal plan. *See id.* The City Council initially authorized the Interim Bylaws for nine months, subject to extension for up to two years. The City Council ultimately authorized them for a total of three years. (Doc. 9-1 at 5.)

The Interim Bylaws recognized that South Burlington "values a balance among our natural, open spaces and our developed, residential and commercial, spaces so that the flora and fauna co-exist alongside human dwellings, schools, industries and services." (Doc. 9-1 at 1.) With that in mind, the City Council "adopted a smart growth strategy in its policy initiatives, including the preservation of open spaces, forest blocks, and working landscapes." (*Id.*) The Interim Bylaws expressed the City Council's determination that "[t]he City needs to review developable lands outside of the Transit Overlay District and certain business park areas, including undeveloped open space, forest blocks and working landscapes such as the City's remaining farms and parcels in the Institutional & Agricultural District." (*Id.*) The Interim Bylaws contemplate the completion of an "extensive study of Planned Unit Developments and

---

[2] S. Burlington Planning Comm'n & S. Burlington City Council, Land Development Regulations 1 (Dec. 7, 2020), https://cms6.revize.com/revize/southburlington/Planning/Regulations%20&%20Plans/Current/Current%20LDRs%20effective%202020-12-28%20USE.pdf [hereinafter Prior LDRs]; S. Burlington Planning Comm'n & S. Burlington City Council, Land Development Regulations 1 (Feb. 7, 2022), https://cms6.revize.com/revize/southburlington/Planning/Regulations%20&%20Plans/LDRs%20adopted%202022-02-07%20FinalFull.pdf [hereinafter 2022 LDRs].

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page5 of 62

Master Plans" by the Planning Commission as well as a "cost-benefit analysis of hypothetical development…on existing developable open spaces, forest blocks, and working landscapes." (*Id.* at 2.) For the land areas to which the new Interim Bylaws applied, the City Council outlawed new planned unit developments, new subdivisions, new principal buildings, and amendments to certain master plans, site plans, or plats. (*Id.* at 3 § IV.) Nevertheless, the City Council retained the authority to "authorize the issuance of permits for the development" that the Interim Bylaws otherwise prohibited "after public hearing preceded by notice" and "only upon a finding by the [City] Council that the proposed use is consistent with the health, safety, and welfare of" South Burlington. (*Id.* at 3–4 § V.) The Interim Bylaws also identified five standards under which to analyze such proposals. (*Id.* at 4.)

On December 17, 2018, the City Council formed an Open Space Interim Zoning Committee to consider "the prioritization for conservation of existing open spaces, forest blocks, and working landscapes in South Burlington in the sustenance of our natural ecosystem, scenic viewsheds, and river corridors." S. Burlington Interim Zoning Committee, Final Report, 1, 2 (Mar. 6, 2020).[3] On March 6, 2020, the Committee released its final report. *Id.* The Open Space Committee assessed 190 parcels of open, undeveloped land using a two-tiered evaluation process. The first tier identified parcels of more than four acres, covered by less than 10% of impervious surface, and within the Vermont Agency of Natural Resources BioFinder marked as "highest priority" and "priority." *Id.* The Committee excluded parcels that did not meet these standards. The second tier scored the remaining parcels on the basis of five criteria: water resources, wildlife habitat, forest resources, aesthetics, and agriculture. *Id.* Each criterion counted

---

[3] Available at https://cms6.revize.com/revize/southburlington/Planning/Regulations%20&%20Plans/FinalIZOpenSpaceReport_6Mar2020.pdf.

4

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page6 of 62

for one point. The Committee removed from the evaluation process parcels that were already conserved, such as parks, and parcels that were relatively small, already approved for development, contained a single family home, or excluded for other reasons. The Committee's report identified 25 "highest priority parcels for conservation." *Id.* Twenty parcels, including Plaintiff's parcel, were privately owned; five belonged to the University of Vermont. *Id.* at 23.

Plaintiff's real property consists of 113.8 acres close to the overpass of Hinesburg Road (Vermont Route 116) over interstate I-89. (Doc. 5-3 at 2, 4.) The Open Space Report gave the parcel a score of 4 out of 5 possible points. Final Report at 50. The relatively high score identified it as subject to potential restrictions on development. *Id.* Plaintiff takes issue with the scoring of its property. (Doc. 1 ¶¶ 38–46.) It alleges that the parcel should have scored only 1 out of 5—resulting in its exclusion from the properties to be considered for zoning protection.

At its November 8, 2021 meeting, the City Council considered the proposed amendments to the LDRs. It voted to authorize hearings to consider these changes. (Doc. 1 ¶ 57.) In January 2022, the City Council released a redline draft showing proposed changes. *See generally* S. Burlington Planning Comm'n & S. Burlington City Council, Proposed Land Development Regulations (Jan. 18, 2022).[4] These amended LDRs contained provisions implementing aspects of the Open Space Report. The changes relevant to this case include the recognition of "Habitat Blocks" and "Habitat Connectors" within the permitting criteria. These were identified as "Level 1 Resources" subject to protection as "significant wildlife habitat" and identified on a "Habitat Block and Habitat Connector Overlay District Map." *See, e.g.*, *id.* at 21, 24, 39, 57, 226. Designation as a Habitat Block or Habitat Connector triggered land use restrictions including a

---

[4] Available at https://cms6.revize.com/revize/southburlington/Planning/LDR%20 Amendments/2021-10%20Full/For%20Council%20Hearing%202022-02- 07/LDR%20Draft%202022-01-18%20Complete%20Redline.pdf.

general requirement that "all lands within a Habitat Block must be left in an undisturbed, naturally vegetated condition." *Id.* at 229 § 12.04(F)(1). The amended LDRs forbid development within Habitat Blocks with minor exceptions not relevant here for features such as trails. This protection also applied to Habitat Connectors joining nearby Habitat Blocks. *Id.* at 231–32 § 12.05.

On February 7, 2022, the City Council voted to adopt the amendments to the Land Development Regulations, including the provisions concerning the protection of Habitat Blocks. *See generally* 2022 LDRs.

## II.    Plaintiff's Petitions and Sketch Plans

Plaintiff frequently registered its objections to the changes to the LDRs contemplated by the Open Zoning Committee. In a letter dated in February 2020, Plaintiff objected to the possible designation of its entire parcel and, instead, urged that environmentally sensitive features be protected through buffers and delineation within the parcel itself. (Doc. 1 ¶¶ 66–68.) Plaintiff renewed its objections in letters sent on August 31, 2021 and November 2, 2021. (*Id.* ¶¶ 69–71.)

On August 31, 2021, while the Interim Bylaws remained in effect and before the City Council finalized the proposed amendments to the LDRs, Plaintiff submitted a "sketch plan" to the City Council. (Doc. 1 ¶¶ 80–82.) Plaintiff's sketch plan proposed the construction of 24 commercial buildings, serving retail, service, and light industrial business use. (*See* Doc. 5-2 at 1.) After a public hearing on November 8, 2021, the same meeting in which it considered the proposed amendments to the LDRs, the City Council denied Plaintiff's sketch plan and application. (Doc. 1 ¶ 82; Doc. 5-2.)

The City Council explained that Plaintiff's sketch plan was subject to the prohibition on development for Habitat Block of the Interim Bylaws, which the City Council was considering

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page8 of 62

as permanent amendments to the LDRs. (Doc. 5-2 at 3; *see* Doc. 9-1 at 3, ¶ IV.) As the City Council explained, it had "not completed the preparation of these amendments, [so] the City Council does not yet know for certain the standards that will apply to development of the subject property." (Doc. 5-2 at 3.) In addition, the City Council clarified that it had conducted no more than a "minimal assessment of the proposed development" and noted that "[w]hile not a complete assessment, it is very likely that development of this . . . parcel . . . would not comply with the LDR amendments approved by the planning commission." (*Id.*) As a result, the City Council concluded that "[b]ased on these unknowns and an initial review of the application of the draft amendments approved by the Planning Commission, . . . the proposed project will or could be contrary to the amendments to the [LDRs] that the City adopts." (*Id.* at 4.)

On December 21, 2021, the DRB also reviewed Plaintiff's sketch plan and, on December 21, 2021, recommended that DRB "conclude the Sketch Plan meeting" because "significant modifications to the plan are necessary to meet the draft regulations, which would require re-warning" and explained that Plaintiff "may return with a revised sketch under the Draft LDR." (Doc. 5-3 at 5.)

On January 6, 2022, Plaintiff forwarded an expert report criticizing the designation of a Habitat Block within its parcel. (Doc. 1 ¶¶ 72-79.) Plaintiff's expert opined on the suitability of the land for habitat and concluded that the "City Council had no rational basis" for designating Plaintiff's property as a Habitat Block. (*Id.* ¶ 79.)

In the complaint, Plaintiff takes particular issue with several provisions of the Habitat Block regulations. These include the general ban on development ("all lands within a Habitat Block must be left in an undisturbed, naturally vegetated condition"), the curtailment of "traditional property rights" such as the clearing of trees, the creation of new lawn areas, and

storage of snow, and the right to exclude humans or wild animals by building fences. (Doc. 1 ¶¶ 18–20.)

Beyond its complaints about the LDRs, Plaintiff complains about the participation of city councilor Meaghan Emery in the process of developing and adopting the amendments. This allegation requires a brief explanation. In addition to her duties as a municipal leader, Ms. Emery serves as an adjunct professor at the University of Vermont. (*Id.* ¶ 23.) After UVM objected to the designation of property it planned to develop as a protected habitat block, the land use regulations were revised to recognize that "Habitat Block and Habitat Connector designations are subject to the limitations in 24 V.S.A. § 4413(a) for uses enumerated therein and proposed by entities such as the State of Vermont, the City of South Burlington, the Champlain Water District, or the University of Vermont." 2022 LDRs at 54, § 3.04(H). Plaintiff asserts that UVM received unfair special treatment in the development of the LDRs, that Ms. Emery should have disqualified herself from voting on the amended regulations due to her employment by UVM and that, if she had, the vote would have come out differently. (Doc. 1 ¶¶ 25–26.)

This factual summary does not recount every criticism levied by Plaintiff against the amended LDRs. Plaintiff takes issue with the methodology employed in creating the "Habitat Block" designation and questions its utility in protecting and conserving wildlife. Plaintiff alleges that the Open Space Committee's designation of its property as one of the 25 large blocks eligible for open space protection was conducted in error. Plaintiff takes the DRB to task for denying approval of its sketch plan application for development of the parcel. These more specific complaints about the municipal planning process are complaints that the LDRs are the result of poor policy decisions or that the municipal regulators have applied the LDRs

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page10 of 62

incorrectly. They are distinct from the federal constitutional claims which are the focus of this decision.

Plaintiff filed suit on February 24, 2022, after the City Council adopted the amended Land Development Regulations on February 7, 2022. (Doc. 1.) Plaintiff sued the City of South Burlington, the South Burlington City Council, and City Councilors Meaghan Emery, Timothy Barritt, and Helen Riehle (collectively "Defendants"). (*Id.* ¶¶ 6–11.)

Defendants move to dismiss Plaintiff's complaint, arguing that its federal-law causes of action are not yet ripe and, if dismissed, the court should decline to exercise supplemental jurisdiction over its state-law causes of action. (*See* Doc. 4.) Plaintiff filed its response, and Defendants replied. (Docs. 5, 9.) The court heard oral argument on August 3, 2022 and took the matter under advisement at that time.

## Legal Standard

In ruling on a motion to dismiss, the court accepts as true the allegations of the complaint and draws all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page11 of 62

<u>**Analysis**</u>

Plaintiff brings claims under 42 U.S.C. § 1983 for deprivation of its protected constitutional rights, a claim under the Declaratory Judgment Act, 28 U.S.C. § 2202, claims under the Vermont Constitution, and claims without a specified federal or state cause of action.

Defendants seek dismissal of the federal constitutional claims on grounds of ripeness. They invoke the "final-decision rule." In their view, Plaintiff has never "submitted to the DRB a complete application to develop its property or to modify its Habitat Block designation since the amended LDRs took effect." (Doc. 4 at 5.) According to Defendants, in the absence of such a submission, "the application of the LDRs to Plaintiff's property is presently unclear: the LDRs give the DRB substantial discretion to allow development on Plaintiff's property." (*Id.*) Defendants argue that Plaintiff's claims of unconstitutional taking, violation of due process, equal protection, and reverse spot zoning should be dismissed on prudential ripeness grounds.

Plaintiff responds that the City Council and the DRB have already rejected its proposal to develop the property when the council members rejected its proposal under the IZ procedures in November 2018. In Plaintiff's view, its "facial" challenges to the LDRs are already ripe because Defendants have conducted a "physical invasion" of its property and the LDRs prevent it from developing property due to the designation of portions of the acreage as "Habitat Blocks" or "Habitat Corridors." (*See* Doc. 5 at 19.)

I.     **Taking Claim**

In Count One, Plaintiff alleges that the amended LDRs permit the designation of Habitat Blocks and increase the buffer zones around wetlands from 50 to 100 feet, both of which impose restrictions on Plaintiff's use of its property for which it has not received compensation as required by both the United States and Vermont Constitutions. Plaintiff alleges that it cannot

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page12 of 62

fence the property to exclude human trespassers or "animals that are to inhabit the land designated as a 'Habitat Block.'" (Doc. 1 ¶ 116.) Plaintiff alleges that it purchased the land for development purposes and that the amended LDRs defeat this legitimate plan. In addition, Plaintiff decries the use of "Habitat Blocks" as "a guise to allow anti-property rights advocates to prevent further development" at the behest of "a small group of private citizens" in violation of the broader public interest. (*Id.* ¶ 118.)

## A.   Ripeness Requirements for Federal Takings Claims

The ripening of fruit and vegetables has long provided a metaphor for life's passages. William Shakespeare, *King Lear*, act 5, sc. 2, 12 ("Ripeness is all"); John Keats, *To Autumn* ("And fill all fruit with ripeness to the core."). The fundamental issue is "whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties." 15 Moore's Fed. Prac.– Civil § 101.70.

Federal jurisdiction is limited to resolving cases and controversies. U.S. Const. art. III. § 2. Ripeness doctrine requires courts to consider whether it is premature to decide that the parties have a live dispute that satisfies this constitutional standard. "A claim is not ripe if it depends upon 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). "The doctrine's major purpose is to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

Federal courts have long recognized that a decision about ripeness has both a constitutional and a prudential dimension. *Reno v. Cath. Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993) ("[The] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." (collecting cases)). Recent decisions of the Supreme Court have cast doubt on the viability of the prudential ripeness doctrine. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 128 & n.3 (2014) (prudential standing); *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 167 (2014).

A federal court's concern about adjudicating a case before it is ripe is "especially pronounced in the land-use context." *Vill. Green at Sayville, LLC v. Town of Islip,* 43 F.4th 287, 293 (2d Cir. 2022). There are several reasons for the prominence of the ripeness doctrine in these cases. One is that whether a taking has occurred depends upon factors such as "the economic impact of the state's actions and its interference with investment-backed expectations." *Kurtz v. Verizon N.Y., Inc.,* 758 F.3d 506, 512 (2d Cir. 2014), *abrogated on other ground by Knick v. Twp. of Scott, Pa.,* 139 S. Ct. 2162 (2019)). A second reason is that after review of an application, a municipal zoning board may remove an obstacle to a proposed development through discretionary decision-making. When, as here, the case concerns judicial review of another branch of government, the ripeness requirement reduces the risk of interference in the executive or legislative functions. If judicial review is later appropriate, the court may be better informed on a complete record after the zoning board issues a final decision. *See id.*

Because of the importance of ripeness in constitutional takings challenges to zoning regulations, courts must apply the final-decision rule regardless of whether ripeness is described as jurisdictional or prudential. *See Vill. Green at Sayville, LLC* 43 F.4th at 293–94; *see also Pakdel v. City & Cnty. of San Francisco, Cal.,* 141 S. Ct. 2226, 2228, 2230 (2021) (per curiam)

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page14 of 62

(discussing final decision rule for takings challenges without differentiating between prudential or constitutional ripeness). This rule asks whether the "government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Vill. Green at Sayville, LLC,* 43 F.4th at 294 (internal quotations omitted). While the requirement is "relatively modest[,]" a plaintiff "must show. . . that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230 (quoting *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 739 (1997).)

Like most rules, there are exceptions to the rule where a property owner's appeal to a zoning board of appeals of request for a variance would be futile or where a policy is facially discriminatory. *Vill. Green at Sayville, LLC,* 43 F.4th at 294. As a result, the rule cannot be "mechanically applied." *Id.* (internal quotation marks omitted).

With these general principles in mind, the court begins by reviewing the arguments and legal positions of both sides.

## B.     No Plausible Allegation of a Physical Taking

Plaintiff seeks to define the taking here as a physical taking. According to Plaintiff, the amended LDRs "take[] away [its] rights to possess, control and dispose of its property." (Doc. 5 at 20.) Plaintiff also describes its challenge as "facial," meaning that the LDRs result in a taking of its property rights regardless of how the DRB may apply them to a particular proposal. (*See id.* at 14.) For this reason, Plaintiff contends that the court does not need to wait for a final decision from the DRB and instead should strike down the amended LDRs as violating the Fifth Amendment now because it is unconstitutional under any interpretation by the zoning authorities.

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page15 of 62

In the court's view, the complaint contains no plausible allegation of a physical taking. *See Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 537 (2005) ("The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property"). Examples of physical takings include the forced installation of utility equipment, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), permanent flooding due to construction of a dam, *Pumpelly v. Green Bay Co.*, 80 U.S. 166 (1871), seizure of a mine during wartime, *United States v. Pewee Coal Co.*, 341 U.S. 114 (1951), and entry of union representatives, *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). As these examples suggest, a physical taking is "relatively rare" and "easily identified." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002). In *Yee v. City of Escondido, Cal.,* for example, the Supreme Court rejected the property owner's claim that rent restrictions amounted to a physical invasion of the owner's rights, explaining that "[t]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." 503 U.S. 519, 527 (1992).

Plaintiff alleges no physical entry or occupation of its land. Plaintiff also does not allege that the amended LDRs require the landowner to submit to the physical occupation of its land.[5]

---

[5] According to Plaintiff, it has suffered a physical taking because it cannot build a fence to exclude people or animals from entering its property, meaning people and animals are physically occupying its land. (Doc. 5 at 20 (citing Doc. 1 ¶¶ 18–20, 116).) But the amended LDRs contain an explicit exemption for fencing. *Cf. Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 94 (2d Cir. 1992), *abrogated on other grounds by Knick*, 139 S. Ct. at 2169 (noting plaintiff could possibly exclude deer using a fence). Section 12.04(G) explains that certain uses of property designated as a "Habitat Block" do not require application and review by the Land Development Board. One of those is the uses and activities listed in Section 12.01(C). 2022 LDRs § 12.04(G)(3). Section 12.01(C) explicitly permits the construction of fences that are "lower than 4 feet and that have at least 16 inches of clearance between the lowest horizontal part of the fence and the ground," subject to the portion of the LDRs further regulating fences. 2022 LDRs § 12.01(C)(1). Plus, Plaintiff "retains the right to exclude any persons from the land, perhaps by posting 'No Trespassing' signs." *Southview Assocs., Ltd.*, 980 F.2d at 94.  The limits

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page16 of 62

Instead, the complaint alleges that the LDRs restrict its planned development and include restrictions such as a prohibition on fencing Habitat Blocks. These are conventional grounds for claims of regulatory taking and inverse condemnation. They do not amount to a physical taking.

### C.  No Plausible Allegation of a Deprivation of All Economically Beneficial Use of the Property

There is a second exception to the rule that takings claims are not ripe unless the zoning board issues a final decision. These are cases in which the regulation is both confiscatory and certain in its application such that a court may proceed directly to the takings issue before a final decision. In *Lucas v. South Carolina Coastal Council*, for example, state legislation barred any development of the plaintiff's residential lots on a barrier island. 505 U.S. 1003, 1008–09 (1992). The Supreme Court held that such a "total deprivation of beneficial use" gave rise to a takings claim that was not subject to the final decision rule. *Id.* at 1017, 1019. The Supreme Court reached similar decisions in *Suitum*, 520 U.S. at 739 ("The demand for finality is satisfied by [property owner's] claim, however, there being no question here about how the regulations at issue apply to the particular land in question." (cleaned up) and *Pakdel*, 141 S. Ct. at 2230 ("In this case, there is no question about the city's position . . . .").

In this case, there is considerable uncertainty about how South Burlington will apply the "Habitat Block" provisions of the amended LDRs. The LDRs include provisions for variance and for adjustments of the location and boundaries of the Habitat Blocks. Having read the complaint and reviewed the LDRs, the court has no prediction about how Plaintiff's application may fare— in large part because Plaintiff has not submitted an application directed to the amended LDRs. Both the City Council's explanation for its denial of Plaintiff's sketch plan and the DRB's

---

on fencing provides a good example of an issue that will be far better developed after submission of an application to the DRB.

explanation for denying the same support this conclusion. For example, the City Council's

November 8, 2021 denial of its sketch plan explains:

> Under the draft [Land Development Regulations], development is generally
> prohibited on lands within a Habitat Block. The application does not include any
> information regarding the location of this overlay district, but it is apparent that the
> proposed development includes several buildings and associated infrastructure
> within the proposed Habitat Block Overlay district.

(Doc. 5-2 at 4.) This does not say that Plaintiff may not develop the land at all or that it may not

develop in the designated "Habitat Block." Instead, it states that Plaintiff's application included

development within a "Habitat Block" and that Plaintiff did not attempt to comply with the draft

LDRs. The City Council went on to note the number of unknowns presented by Plaintiff's sketch

plan. (*Id.* at 5). The number of unanswered questions that the City Council identified means

Plaintiff has not shown that "'there [is] no question . . . about how the 'regulations at issue apply

to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230 (quoting *Suitum*, 520 U.S. at 739).

The DRB's denial identified many of the same uncertainties. The DRB explained that

"significant modifications to the plan are necessary in order to meet the draft regulations" and

that Plaintiff could "return with a revised sketch under the Draft LDRs." (Doc. 5-3 at 5.) Like the

above, the court cannot say as a matter of law that no questions remain as to how the amended

LDRs would apply to Plaintiff's proposal.

The court also finds that none of the exceptions to the final-decision rule apply here. That

is because the amended LDRs explained that the goal of the Habitat Block Overlay District is to

"to avoid undue adverse effects from development on these resources, promote the natural

succession of vegetated areas of native vegetation in order to support wildlife habitat and

movement, promote carbon sequestration, filter air, and increase infiltration and base flows in the

City's streams and Lake Champlain." 2022 LDRs § 12.04(A). To accomplish this end, the

regulations create an overlay map that identifies the "Habitat Blocks." The blocks can be

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page18 of 62

modified through minor boundary adjustments, exchanges of land within a parcel, and other adjustments. The blocks must be left in an "undisturbed, naturally vegetated condition." Tree clearing, lawns, and encroachment by structures are prohibited. The regulations provide similar protection and modifications for "Habitat Connectors" which are 150 foot wide strips between "Habitat Blocks."

As in many regulatory takings cases, the critical question is how much has the property owner actually lost? This question cannot be answered in the abstract in this case. The identification of a "Habitat Block" does not foreclose all opportunities for development. It limits the use of a portion of the parcel. Here, the DRB estimated that approximately 43 acres of Plaintiff's 113.8-acre parcel falls within a Habitat Block. (Doc. 5-3 at 2, 4.) The LDRs anticipate that parcels that include "Habitat Blocks" or "Habitat Connectors" will be developed with limitations to protect wildlife. It is possible that the "Habitat Block" located on Plaintiff's property may preclude any commercially viable development plan. Or the "Habitat Block" may be no more than one consideration among others in a relatively flexible planning process. Or the owner's needs may be met through a land exchange or boundary adjustment reached through agreement with the zoning authority. But that is just it—the court does not yet know. In the absence of a concrete plan, submitted to the DRB and a final decision from the DRB, it is not possible to tell how far the regulations encroach on the Plaintiff's right to develop its property. With these possibilities, Plaintiff has not demonstrated that an appropriate application would be futile. *Vill. Green at Sayville, LLC,* 43 F.4th at 294.

The same considerations apply to the increase in the wetland buffer zone. Wetlands have long received protection. Increasing this protection may prevent development or it may have no practical impact.

### D.    Facial or As-Applied Challenge

Plaintiff seeks to avoid the application of the ripeness requirement by characterizing its claim as a facial challenge to any application of the LDRs to private property. In fact, Plaintiff makes both a facial and an as-applied challenge. (*See* Doc. 5 at 14.)  The facial challenge is based on a claim that the enactment of the LDRs was itself a constitutional violation which was complete when the LDRs came into effect. Plaintiff takes a pessimistic view of its prospects before the DRB. At the oral argument on this motion, Plaintiff explained that "on the question of de facto finality, it is de facto final. They told us we can't build in a habitat block. So, no matter what we propose, it's going to be rejected." (Tr. of Hr'g Aug. 3, 2022, Doc. 12 at 16:10–13; *see also* Doc. 5 at 2 (similar).) The as-applied claim concerns the rejection of Plaintiff's proposed development under the IZ bylaws. (Doc. 12 at 27:4–10.)

The court concludes that Plaintiff is jumping the gun. Neither the City Council in applying the IZ zoning procedures nor the DRB in reviewing Plaintiff's sketch plan have ruled in any comprehensive way on Plaintiff's proposal under the LDRs now in effect. Further, these regulations indicate that the DRB may exercise discretionary authority in locating and enforcing the "Habitat Blocks" on undeveloped parcels. The final-decision rule prevents courts from striking down a zoning provision as unconstitutional without a full understanding how the provision functioned in the particular case. So too here.

### E.    Application of the Final-Decision Rule

Defendants seek dismissal of Count One on ripeness grounds because South Burlington has never made a final decision about Plaintiff's plans to develop the parcel. (Doc. 4 at 11 (citing *Pakdel*, 141 S. Ct. at 2230 and *Suitum*, 520 U.S. at 739).) Defendants contend that without a

request for a permit or variance, "it is entirely speculative how [municipal] discretion would be exercised with respect to Plaintiff's parcel." (*Id.*)

Plaintiff characterizes the issue as one of exhaustion of remedies. (Doc. 5 at 4–12.) Relying on *Knick* and *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496 (1982), Plaintiff argues that its case became ripe as soon as South Burlington adopted the LDRs. (Doc. 5 at 4–5.)

It is true that, prior to the Supreme Court's decision in *Knick*, property owners aggrieved by a governmental taking were required to exhaust administrative and state court compensation remedies before filing a federal lawsuit. A constitutional tort claim under 42 U.S.C. § 1983 was the last stop on the line and frequently subject to res judicata for issues already litigated in state court. Plaintiff relies on *Knick* as a basis for seeking judicial relief before receiving a final decision on a specific development proposal.

But exhaustion of remedies and ripeness are not the same. It is now well-settled law that there is no exhaustion requirement in § 1983 cases (except for statutory exceptions not relevant here). *Patsy*, 457 U.S. at 516 ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."); *Heck v. Humphrey*, 512 U.S. 477 (1994). As plaintiff observes, in *Knick*, the Supreme Court extended this principle to takings claims, overruling that portion of its decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *Knick*, 139 S. Ct. at 2167, 2169–70. Federal takings claims asserted under § 1983 are no longer subject to a requirement that plaintiffs file first for compensation in state court. *See id.*

Demolishing the straw man of exhaustion of remedies does not also remove the requirement of ripeness. The constitutional requirement of ripeness continues to apply to all

19

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page21 of 62

federal cases, including § 1983 claims. In regulatory taking cases, the ripeness requirement asks whether the government "has reached a 'final' decision. After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Pakdel*, 141 S. Ct. at 2228 (internal citation omitted).

Although the *Williamson County* holding on exhaustion of remedies was overruled by the *Knick* decision, it remains the leading case on ripeness in land use disputes. It continues to require a final decision regarding the application of the regulations to the property at issue. *See Vill. Green at Sayville,* 43 F.4th at 287 ("Accordingly, federal courts adhere to specific ripeness requirements applicable to land use disputes. *Williamson County* is the foundational case." (cleaned up)). In cases in which the local planning board retains discretion in fashioning its ruling on a zoning application, the final decision rule remains good law. The *Suitum* decision recognizes the continuing viability of Supreme Court cases that found claims unripe when property owners had not submitted plans, *Agins v. City of Tiburon*, 447 U.S. 255 (1980); had failed to request a variance, *Hodel v. Virginia Surface Mining & Reclamation Ass'n., Inc.*, 452 U.S. 264 (1981); or additional factors remained to be presented to the municipal decisionmaker that might allow the project to proceed, *Williamson County* 473 U.S. 172; *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986). *See Suitum*, 520 U.S. at 735–39.

The ripeness question in this case is similar to that faced by the courts in *Suitum* and its predecessors. Has there been a physical invasion of the property by the municipality for which compensation is due as a matter of course? No. While there are zoning restrictions on Plaintiff's use of its property, there is no claim that municipal workers have built a road or in some other way invaded the property. Do the new regulations permanently remove all value from the property so as to amount to a *per se* taking? No again. The LDRs anticipate that open land in

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page22 of 62

South Burlington, including parcels containing "Habitat Blocks," may be developed subject to restrictions. Under these circumstances, a final decision by the zoning agency remains a prerequisite for a constitutional takings claim. *See Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 352–54 (2d Cir. 2005).[6]

## II.   Other Federal Constitutional Claims

Federal courts have also applied the final decision rule to claims that zoning regulations violate constitutional guarantees of substantive due process and equal protection.

Starting with Plaintiff's claims under the Due Process Clause, the same final-decision rule means that this claim, too, is not yet ripe. In *Southview Associates, Ltd.,* the Second Circuit held that a substantive due process challenge to Vermont's Act 250, 10 V.S.A. § 6001 *et seq.*, limiting development across the state was not yet ripe. 980 F.2d at 99. In that case, the developer challenged the protection of a winter deeryard as violating principles of due process because it was arbitrary and capricious and because it was the equivalent of a taking by eminent domain,

---

[6] Decisions concerning the ripeness of takings claims may address only jurisdictional ripeness or may also apply prudential ripeness concerns. In *Williamson County*, for example, the Supreme Court concluded that the factors governing what constitutes a taking "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." 473 U.S. at 191. This sounds like constitutional ripeness since it is impossible—not just unwise or inefficient—to evaluate the plaintiff's claim without a final decision. In a more recent case, *Murphy v. New Milford Zoning Comm'n*, the court based its decision on both aspects of the doctrine, explaining that "[the two-prong ripeness analysis] in some ways tracks both the doctrine's Article III and prudential underpinnings." 402 F.3d at 347. With serious doubt now cast on the viability of the prudential prong, this court relies on the jurisdictional basis for ripeness. The case is not ripe because in the words of *Williamson*, we simply do not know whether the plaintiff will be hampered and constrained in its development plans at a level sufficient to support a takings claim. That is a concern about jurisdictional ripeness, specifically whether there will later be a real dispute in the case at all. To the extent it remains alive, the prudential concern over the inadequate factual record at this time and the entanglement of the court in municipal government provide subsidiary support for dismissal.

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page23 of 62

making it beyond the limits of the state's police power. *Id.* at 96. The panel, chaired by Chief Judge Oakes, held in relevant part that the due process (and a related equal protection claim) were subject to *Williamson* principles of exhaustion and ripeness. *See id.* at 97, 99, 103 n.10. As we have seen, the exhaustion requirement is no longer good law. But the ripeness requirement remains very much alive, and that portion of *Southview* is binding authority today.

*Southview* requires a developer who seeks to strike down a state land use law to obtain a final ruling from the regulator. Without such a decision, "a court cannot determine adequately the economic loss—a central factor in inquiry—occasioned by the application of the regulatory restrictions." *Id.* at 96. As *Southview* makes clear, this requirement applies to substantive due process claims that a statute is arbitrary and capricious or exceeds the legislative authority in the same manner that it applies to the Fifth Amendment taking claim. *Id.* at 99; *see also Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988) ("Our decisions in this area have also clarified that we will apply the same ripeness standards to equal protection and substantive due process claims."); *Unity Ventures v. Cnty. of Lake*, 841 F.2d 770, 776 (7th Cir. 1988) (finding plaintiff's equal protection and due process claims based on application for a sewer connection were not yet ripe).

Turning to Plaintiff's claim under the Equal Protection Clause, it is also not yet ripe. Plaintiff alleges that South Burlington's amended LDRs treated its land differently than others similarly situated in the town of South Burlington. (Doc. 1 ¶¶ 142–153.) This is based on Plaintiff's contention that it should have received a different rating in the Open Space Interim Zoning Committee's final report (*Id.* ¶¶ 145–146.) In addition, Plaintiff alleges that it was treated differently than landowners with already developed land, that it should have been treated the

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page24 of 62

same as landowners with less than four acres, and there was no rational basis for treating it differently than UVM. (*Id.* ¶¶ 149–152.)

At base, these allegations depend on how the LDRs are applied to Plaintiff's land. Like Plaintiff's due process claim, its equal protection claim is subject to the same final-decision requirement. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir. 2002) (affirming district court that *Williamson County* finality rule applies to equal protection claims in the context of land use challenges and affirming dismissal for lack of ripeness), *abrogated on other grounds by Knick*, 139 S. Ct. at 2169; *Nenninger v. Village of Port Jefferson*, 509 F. App'x 36, 38–39 (2d Cir. 2013) (summary order) (affirming dismissal of equal protection and due process claims relating to a subdivision proposal as unripe); *see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir. 1990) ( "In evaluating the ripeness of . . . equal protection claims arising out of the application of land use regulations, [courts] employ the same final decision requirement that applies to regulatory taking claims."). Therefore, the court dismisses this claim as unripe.

## III.   Remaining Claims

Having dismissed all of Plaintiff's claims that explicitly involve a federal-law claim, the court turns to the remaining causes of action. Where a federal court dismisses the only federal-law causes of action, it may, in its discretion, decline to continue to exercise supplemental jurisdiction over the remaining state-law causes of action. 28 U.S.C. § 1367(c)(4); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). In making that discretionary decision, a district court must balance judicial economy, convenience, fairness, and comity. *Id.* "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page25 of 62

(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

The court turns first to Plaintiff's claims under the Vermont Constitution, including the taking claim in Count One, due process claims in Count Two, and Common Benefits Clause claim in Count Three. All three are state-law causes of action. Here, the court will dismiss the federal-law claims at the motion to dismiss stage. The parties have not yet begun discovery. Therefore, the court declines to exercise supplemental jurisdiction and dismisses the three state law claims, all without prejudice.

Turning next to Count Seven for illegal reverse spot zoning, Plaintiff has not articulated whether this claim is under federal law or Vermont law. To the extent it is brought under Vermont state law, the court declines to exercise supplemental jurisdiction for the same reasons just articulated. *See, e.g.*, *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1235 (10th Cir. 2021). To the extent it is brought under federal law, it is not ripe for the same reasons already explained.

Turning finally to Count Five, Plaintiff seeks declaratory judgment that the South Burlington City Council lacked the statutory authority to designate a portion of its land as a Habitat Block. (Doc. 1 ¶¶ 155–156.) According to Plaintiff, "the state statute creating forest blocks did not authorize the City to create 'Habitat Blocks' for reasons different from the reasoning for forming Forest Blocks." (*Id.* ¶ 155.)

Even though Plaintiff alleges this claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that alone does not provide a federal ingredient sufficient for federal question jurisdiction. That is because Plaintiff requests the court to grant declaratory judgment on a matter of state law, not federal law. An action under the Declaratory Judgment Act alone does not create

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page26 of 62

the requisite federal ingredient. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–73 (1950) (explaining that the Declaratory Judgment Act does not expand the subject matter jurisdiction of federal courts); *Freeman v. Burlington Broad., Inc.*, 204 F.3d 311, 318 n.4 (2d Cir. 2000) (similar). As a result, this claim falls under the court's supplemental jurisdiction. Like the other non-federal claims, the court declines to exercise its supplemental jurisdiction over this claim and dismisses it.

## Conclusion

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Doc. 4). The dismissal is without prejudice.

Dated at Rutland, in the District of Vermont, this 27th day of January, 2023.

_____
Geoffrey W. Crawford, Chief Judge
United States District Court

lbb

# UNITED STATES DISTRICT COURT
for the
District of Vermont

| | | |
|---|---|---|
| 835 Hinesburg Road, LLC | ) | |
| *Plaintiff(s)* | ) | |
| | ) | |
| v. | ) | Civil Action No.  5:22-cv-58 |
| | ) | |
| Timothy Barritt, Meaghan Emery, Helen Riehle, City of | ) | |
| South Burlington, South Burlington City Council | ) | |
| *Defendant(s)* | ) | |

## JUDGMENT IN A CIVIL ACTION

☐ **Jury Verdict.**

☑ **Decision by Court.**

**IT IS ORDERED AND ADJUDGED** that pursuant to the court's Order (Document No. 13) filed January 27, 2023, defendants' Motion to Dismiss (Document No. 4) is GRANTED. The case is hereby DISMISSED without prejudice.

Date:   January 27, 2023

*JEFFREY S. EATON*
*CLERK OF COURT*

JUDGMENT ENTERED ON DOCKET
DATE ENTERED:   1/27/2023

*/s/ Elizabeth Morris*
*Signature of Clerk or Deputy Clerk*

**UNITED STATES DISTRICT COURT**

OFFICE OF THE CLERK

DISTRICT OF VERMONT

FEDERAL BUILDING
**BURLINGTON, VERMONT 05402-0945**

☐ P.O. BOX 945
BURLINGTON 05402-0945
(802) 951-6301

☒ P.O. BOX 607
RUTLAND 05702-0607
(802) 773-0245

**JEFFREY S. EATON**
CLERK

Civil Action: 5:22-cv-58                                    Date:  January 27, 2023

835 Hinesburg Road, LLC v. City of South Burlington et al.

<u>NOTICE TO LITIGANTS</u>

If you wish to appeal the enclosed judgment or order, you must file a Notice of Appeal within 30 days after entry of the judgment or order appealed from (or 60 days if the United States or an officer or agency of the United States is a party).  Fed. R. App. P. 4(a)(1).  The fee for filing an appeal is $505.00.

If you wish to appeal but are unable to file your Notice of Appeal within 30 days [or 60 days if applicable] after the date of entry shown on line 2 below, then you have an additional 30 days to file a Motion for Extension of Time.  The Motion for Extension of Time **must** be filed within 30 days after the date on line 3 below.  Every Motion for Extension of Time must contain an explanation which demonstrates "good cause" or "excusable neglect" for failure to file the Notice of Appeal within the time limit required. Fed. R. App. P. 4(a)(5).

**PLEASE TAKE NOTICE**

1.  Judgment filed                                    January 27, 2023

2.  Date of Entry of Judgment on
    the docket of this court                     January 27, 2023

3.  Notice of Appeal **MUST** be
    filed on or before                            February 27, 2023

*/s/ Elizabeth Morris*
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| 835 HINESBURG ROAD, LLC, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cv-58 |
| | ) | |
| CITY OF SOUTH BURLINGTON, | ) | |
| SOUTH BURLINGTON CITY COUNCIL, | ) | |
| MEAGHAN EMERY, TIMOTHY BARRITT, | ) | |
| and HELEN RIEHLE, | ) | |
| Defendants | ) | |

## PLAINTIFF'S NOTICE OF APPEAL

Notice is given that Plaintiff 835 Hinesburg Road, LLC, by and through its attorneys, Gravel & Shea PC, hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment entered in this action on January 27, 2023 (Doc. 14) (Exhibit 1), and all underlying rulings in this matter, whether or not they merged into or formed the basis for the Judgment, including without limitation the Court's January 27, 2023 Order on Motion to Dismiss (Doc. 13) (Exhibit 2).

Dated:          February 21, 2023

                                                                    /s/ Matthew B. Byrne
                                                                    Matthew B. Byrne, Esq.
                                                                    Gravel & Shea PC
                                                                    76 St. Paul Street, 7th Floor, P.O. Box 369
                                                                    Burlington, VT  05402-0369
                                                                    (802) 658-0220
                                                                    mbyrne@gravelshea.com
                                                                    Attorneys For Plaintiff

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369

# Exhibit 1

# UNITED STATES DISTRICT COURT
for the
District of Vermont

| | | |
|---|---|---|
| 835 Hinesburg Road, LLC | ) | |
| *Plaintiff(s)* | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:22-cv-58 |
| | ) | |
| Timothy Barritt, Meaghan Emery, Helen Riehle, City of South Burlington, South Burlington City Council | ) ) | |
| *Defendant(s)* | ) | |

## JUDGMENT IN A CIVIL ACTION

☐ **Jury Verdict.**

☑ **Decision by Court.**

**IT IS ORDERED AND ADJUDGED** that pursuant to the court's Order (Document No. 13) filed January 27, 2023, defendants' Motion to Dismiss (Document No. 4) is GRANTED. The case is hereby DISMISSED without prejudice.

Date: January 27, 2023

*JEFFREY S. EATON*
*CLERK OF COURT*

JUDGMENT ENTERED ON DOCKET
DATE ENTERED: 1/27/2023

*/s/ Elizabeth Morris*

*Signature of Clerk or Deputy Clerk*

### United States District Court

**OFFICE OF THE CLERK**

District of Vermont

Federal Building

**BURLINGTON, VERMONT 05402-0945**

☐ P.O. BOX 945
BURLINGTON 05402-0945
(802) 951-6301

☒ P.O. BOX 607
RUTLAND 05702-0607
(802) 773-0245

**JEFFREY S. EATON**

CLERK

Civil Action: 5:22-cv-58                                    Date:  January 27, 2023

835 Hinesburg Road, LLC v. City of South Burlington et al.

<u>NOTICE TO LITIGANTS</u>

If you wish to appeal the enclosed judgment or order, you must file a Notice of Appeal within 30 days after entry of the judgment or order appealed from (or 60 days if the United States or an officer or agency of the United States is a party).  Fed. R. App. P. 4(a)(1).  The fee for filing an appeal is $505.00.

If you wish to appeal but are unable to file your Notice of Appeal within 30 days [or 60 days if applicable] after the date of entry shown on line 2 below, then you have an additional 30 days to file a Motion for Extension of Time.  The Motion for Extension of Time **must** be filed within 30 days after the date on line 3 below**.**  Every Motion for Extension of Time must contain an explanation which demonstrates "good cause" or "excusable neglect" for failure to file the Notice of Appeal within the time limit required. Fed. R. App. P. 4(a)(5).

**PLEASE TAKE NOTICE**

| | | |
|---|---|---|
| 1. | Judgment filed | January 27, 2023 |
| 2. | Date of Entry of Judgment on the docket of this court | January 27, 2023 |
| 3. | Notice of Appeal **MUST** be filed on or before | February 27, 2023 |

*/s/ Elizabeth Morris*

*Signature of Clerk or Deputy Clerk*

# Exhibit 2

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page34 of 62

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 JAN 27 AM 9: 34

CLERK

BY_____
DEPUTY CLERK

835 HINESBURG ROAD, LLC,          )
                                  )
        Plaintiff,                )
                                  )
        v.                        )      Case No. 5:22-cv-58
                                  )
CITY OF SOUTH BURLINGTON,         )
SOUTH BURLINGTON CITY COUNCIL,    )
MEAGHAN EMERY, TIMOTHY            )
BARRITT, and HELEN RIEHLE,        )
                                  )
        Defendants.               )

**ORDER ON MOTION TO DISMISS**
**(Doc. 4)**

This case concerns federal constitutional and state law challenges to land use regulations

recently adopted by the City Council of South Burlington, Vermont. The regulations designate

portions of certain parcels of land in South Burlington as "Habitat Blocks," and limit

development thereon to preserve open space for a variety of reasons. Plaintiff owns a 113.8-acre

parcel of undeveloped property in South Burlington, portions of which are designated as Habitat

Blocks. Plaintiff objects to having certain portions designated as "Habitat Blocks" and alleges

that the designation prevents it from using the property as it wishes or developing it in the future.

Plaintiff's primary claim is an inverse condemnation claim—that in enacting its land use

regulations, South Burlington has taken property rights without compensation in violation of the

Fifth Amendment to the United States Constitution (Count One). Plaintiff also asserts federal

constitutional claims under the Due Process Clause and Equal Protection Clause (Counts Two &

Four). In addition, Plaintiff makes similar claims under the Vermont Constitution, including

under the Takings, Due Process, and Common Benefits clauses of the Vermont Constitution

(Counts One–Three). Separate from the constitutional claims, Plaintiff asserts a declaratory

ruling under state law that South Burlington "lacked legal authority to designate Plaintiff's land as a "Habitat Block" under "the state statute creating forest blocks" (Count Five). (Doc. 1 ¶ 155.) Plaintiff also makes a claim under municipal law that one of the city councilors who voted to adopt the regulations should have disqualified herself because she was employed by the University of Vermont which received favorable treatment under these provisions (Count Six). Lastly, Plaintiff claims that South Burlington "discriminated against 835 Hinesburg in creating the new zoning district, especially when combined with the Habitat Block zoning changes" (Count Seven). (Doc. 1 ¶ 164.) The complaint does not state whether this is a federal or a state law claim. (*See id.*)

Defendants filed a motion to dismiss all seven counts in the complaint. (Doc. 4.) For the reasons that follow, the court grants Defendants' motion.

## **Factual Background**

The court draws the following facts from the complaint, the exhibits attached to the parties' memoranda, and certain publicly available information.[1] These exhibits consist of public records such as the South Burlington City Council's Decision regarding Plaintiff's Interim Zoning Application (Doc. 5-2), the South Burlington Development Review Board's ("DRB") decision on Plaintiff's sketch plan application (Doc. 5-3), and the South Burlington Interim Bylaws at issue here (Doc. 9-1). In addition, the court draws from the Land Development

---

[1] In ruling on a 12(b)(6) motion to dismiss, a court may consider the complaint, any writing attached to it as an exhibit, any statements or documents incorporated in the complaint by reference, and matters that may be judicially noticed. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir. 2001).

Regulations ("LDRs") formally adopted by the South Burlington City Council on February 7, 2022 and the LDRs in effect prior to that.[2]

## I.   Interim Bylaws and Amended Land Development Regulations

On November 13, 2018, the South Burlington City Council adopted Interim Zoning Bylaws. (Doc. 1 ¶ 27; Doc. 9-1.) Interim Zoning ("IZ) is permitted by 24 V.S.A. § 4415(a). The statute authorizes a municipality to adopt interim bylaws for a maximum of three years while it considers revisions to its zoning bylaws or municipal plan. *See id.* The City Council initially authorized the Interim Bylaws for nine months, subject to extension for up to two years. The City Council ultimately authorized them for a total of three years. (Doc. 9-1 at 5.)

The Interim Bylaws recognized that South Burlington "values a balance among our natural, open spaces and our developed, residential and commercial, spaces so that the flora and fauna co-exist alongside human dwellings, schools, industries and services." (Doc. 9-1 at 1.) With that in mind, the City Council "adopted a smart growth strategy in its policy initiatives, including the preservation of open spaces, forest blocks, and working landscapes." (*Id.*) The Interim Bylaws expressed the City Council's determination that "[t]he City needs to review developable lands outside of the Transit Overlay District and certain business park areas, including undeveloped open space, forest blocks and working landscapes such as the City's remaining farms and parcels in the Institutional & Agricultural District." (*Id.*) The Interim Bylaws contemplate the completion of an "extensive study of Planned Unit Developments and

---

[2] S. Burlington Planning Comm'n & S. Burlington City Council, Land Development Regulations 1 (Dec. 7, 2020), https://cms6.revize.com/revize/southburlington/Planning/Regulations%20&%20Plans/Current/LDRs%20effective%202020-12-28%20USE.pdf [hereinafter Prior LDRs]; S. Burlington Planning Comm'n & S. Burlington City Council, Land Development Regulations 1 (Feb. 7, 2022), https://cms6.revize.com/revize/southburlington/Planning/Regulations%20&%20Plans/LDRs%20adopted%202022-02-07%20FinalFull.pdf [hereinafter 2022 LDRs].

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page37 of 62

Master Plans" by the Planning Commission as well as a "cost-benefit analysis of hypothetical development…on existing developable open spaces, forest blocks, and working landscapes." (*Id.* at 2.) For the land areas to which the new Interim Bylaws applied, the City Council outlawed new planned unit developments, new subdivisions, new principal buildings, and amendments to certain master plans, site plans, or plats. (*Id.* at 3 § IV.) Nevertheless, the City Council retained the authority to "authorize the issuance of permits for the development" that the Interim Bylaws otherwise prohibited "after public hearing preceded by notice" and "only upon a finding by the [City] Council that the proposed use is consistent with the health, safety, and welfare of" South Burlington. (*Id.* at 3–4 § V.) The Interim Bylaws also identified five standards under which to analyze such proposals. (*Id.* at 4.)

On December 17, 2018, the City Council formed an Open Space Interim Zoning Committee to consider "the prioritization for conservation of existing open spaces, forest blocks, and working landscapes in South Burlington in the sustenance of our natural ecosystem, scenic viewsheds, and river corridors." S. Burlington Interim Zoning Committee, Final Report, 1, 2 (Mar. 6, 2020).[3] On March 6, 2020, the Committee released its final report. *Id.* The Open Space Committee assessed 190 parcels of open, undeveloped land using a two-tiered evaluation process. The first tier identified parcels of more than four acres, covered by less than 10% of impervious surface, and within the Vermont Agency of Natural Resources BioFinder marked as "highest priority" and "priority." *Id.* The Committee excluded parcels that did not meet these standards. The second tier scored the remaining parcels on the basis of five criteria: water resources, wildlife habitat, forest resources, aesthetics, and agriculture. *Id.* Each criterion counted

---

[3] Available at https://cms6.revize.com/revize/southburlington/Planning/Regulations%20&%20Plans/FinalIZOpenSpaceReport_6Mar2020.pdf.

4

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page38 of 62

for one point. The Committee removed from the evaluation process parcels that were already conserved, such as parks, and parcels that were relatively small, already approved for development, contained a single family home, or excluded for other reasons. The Committee's report identified 25 "highest priority parcels for conservation." *Id.* Twenty parcels, including Plaintiff's parcel, were privately owned; five belonged to the University of Vermont. *Id.* at 23.

Plaintiff's real property consists of 113.8 acres close to the overpass of Hinesburg Road (Vermont Route 116) over interstate I-89. (Doc. 5-3 at 2, 4.) The Open Space Report gave the parcel a score of 4 out of 5 possible points. Final Report at 50. The relatively high score identified it as subject to potential restrictions on development. *Id.* Plaintiff takes issue with the scoring of its property. (Doc. 1 ¶¶ 38–46.) It alleges that the parcel should have scored only 1 out of 5—resulting in its exclusion from the properties to be considered for zoning protection.

At its November 8, 2021 meeting, the City Council considered the proposed amendments to the LDRs. It voted to authorize hearings to consider these changes. (Doc. 1 ¶ 57.) In January 2022, the City Council released a redline draft showing proposed changes. *See generally* S. Burlington Planning Comm'n & S. Burlington City Council, Proposed Land Development Regulations (Jan. 18, 2022).[4] These amended LDRs contained provisions implementing aspects of the Open Space Report. The changes relevant to this case include the recognition of "Habitat Blocks" and "Habitat Connectors" within the permitting criteria. These were identified as "Level 1 Resources" subject to protection as "significant wildlife habitat" and identified on a "Habitat Block and Habitat Connector Overlay District Map." *See, e.g.*, *id.* at 21, 24, 39, 57, 226. Designation as a Habitat Block or Habitat Connector triggered land use restrictions including a

---

[4] Available at https://cms6.revize.com/revize/southburlington/Planning/LDR%20 Amendments/2021-10%20Full/For%20Council%20Hearing%202022-02-07/LDR%20Draft%202022-01-18%20Complete%20Redline.pdf.

general requirement that "all lands within a Habitat Block must be left in an undisturbed, naturally vegetated condition." *Id.* at 229 § 12.04(F)(1). The amended LDRs forbid development within Habitat Blocks with minor exceptions not relevant here for features such as trails. This protection also applied to Habitat Connectors joining nearby Habitat Blocks. *Id.* at 231–32 § 12.05.

On February 7, 2022, the City Council voted to adopt the amendments to the Land Development Regulations, including the provisions concerning the protection of Habitat Blocks. *See generally* 2022 LDRs.

## II.    Plaintiff's Petitions and Sketch Plans

Plaintiff frequently registered its objections to the changes to the LDRs contemplated by the Open Zoning Committee. In a letter dated in February 2020, Plaintiff objected to the possible designation of its entire parcel and, instead, urged that environmentally sensitive features be protected through buffers and delineation within the parcel itself. (Doc. 1 ¶¶ 66–68.) Plaintiff renewed its objections in letters sent on August 31, 2021 and November 2, 2021. (*Id.* ¶¶ 69–71.)

On August 31, 2021, while the Interim Bylaws remained in effect and before the City Council finalized the proposed amendments to the LDRs, Plaintiff submitted a "sketch plan" to the City Council. (Doc. 1 ¶¶ 80–82.) Plaintiff's sketch plan proposed the construction of 24 commercial buildings, serving retail, service, and light industrial business use. (*See* Doc. 5-2 at 1.) After a public hearing on November 8, 2021, the same meeting in which it considered the proposed amendments to the LDRs, the City Council denied Plaintiff's sketch plan and application. (Doc. 1 ¶ 82; Doc. 5-2.)

The City Council explained that Plaintiff's sketch plan was subject to the prohibition on development for Habitat Block of the Interim Bylaws, which the City Council was considering

6

as permanent amendments to the LDRs. (Doc. 5-2 at 3; *see* Doc. 9-1 at 3, ¶ IV.) As the City Council explained, it had "not completed the preparation of these amendments, [so] the City Council does not yet know for certain the standards that will apply to development of the subject property." (Doc. 5-2 at 3.) In addition, the City Council clarified that it had conducted no more than a "minimal assessment of the proposed development" and noted that "[w]hile not a complete assessment, it is very likely that development of this . . . parcel . . . would not comply with the LDR amendments approved by the planning commission." (*Id.*) As a result, the City Council concluded that "[b]ased on these unknowns and an initial review of the application of the draft amendments approved by the Planning Commission, . . . the proposed project will or could be contrary to the amendments to the [LDRs] that the City adopts." (*Id.* at 4.)

On December 21, 2021, the DRB also reviewed Plaintiff's sketch plan and, on December 21, 2021, recommended that DRB "conclude the Sketch Plan meeting" because "significant modifications to the plan are necessary to meet the draft regulations, which would require re-warning" and explained that Plaintiff "may return with a revised sketch under the Draft LDR." (Doc. 5-3 at 5.)

On January 6, 2022, Plaintiff forwarded an expert report criticizing the designation of a Habitat Block within its parcel. (Doc. 1 ¶¶ 72-79.) Plaintiff's expert opined on the suitability of the land for habitat and concluded that the "City Council had no rational basis" for designating Plaintiff's property as a Habitat Block. (*Id.* ¶ 79.)

In the complaint, Plaintiff takes particular issue with several provisions of the Habitat Block regulations. These include the general ban on development ("all lands within a Habitat Block must be left in an undisturbed, naturally vegetated condition"), the curtailment of "traditional property rights" such as the clearing of trees, the creation of new lawn areas, and

storage of snow, and the right to exclude humans or wild animals by building fences. (Doc. 1 ¶¶ 18–20.)

Beyond its complaints about the LDRs, Plaintiff complains about the participation of city councilor Meaghan Emery in the process of developing and adopting the amendments. This allegation requires a brief explanation. In addition to her duties as a municipal leader, Ms. Emery serves as an adjunct professor at the University of Vermont. (*Id.* ¶ 23.)  After UVM objected to the designation of property it planned to develop as a protected habitat block, the land use regulations were revised to recognize that "Habitat Block and Habitat Connector designations are subject to the limitations in 24 V.S.A. § 4413(a) for uses enumerated therein and proposed by entities such as the State of Vermont, the City of South Burlington, the Champlain Water District, or the University of Vermont." 2022 LDRs at 54, § 3.04(H). Plaintiff asserts that UVM received unfair special treatment in the development of the LDRs, that Ms. Emery should have disqualified herself from voting on the amended regulations due to her employment by UVM and that, if she had, the vote would have come out differently. (Doc. 1 ¶¶ 25–26.)

This factual summary does not recount every criticism levied by Plaintiff against the amended LDRs. Plaintiff takes issue with the methodology employed in creating the "Habitat Block" designation and questions its utility in protecting and conserving wildlife. Plaintiff alleges that the Open Space Committee's designation of its property as one of the 25 large blocks eligible for open space protection was conducted in error. Plaintiff takes the DRB to task for denying approval of its sketch plan application for development of the parcel. These more specific complaints about the municipal planning process are complaints that the LDRs are the result of poor policy decisions or that the municipal regulators have applied the LDRs

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page41 of 62

incorrectly. They are distinct from the federal constitutional claims which are the focus of this decision.

Plaintiff filed suit on February 24, 2022, after the City Council adopted the amended Land Development Regulations on February 7, 2022. (Doc. 1.) Plaintiff sued the City of South Burlington, the South Burlington City Council, and City Councilors Meaghan Emery, Timothy Barritt, and Helen Riehle (collectively "Defendants"). (*Id.* ¶¶ 6–11.)

Defendants move to dismiss Plaintiff's complaint, arguing that its federal-law causes of action are not yet ripe and, if dismissed, the court should decline to exercise supplemental jurisdiction over its state-law causes of action. (*See* Doc. 4.) Plaintiff filed its response, and Defendants replied. (Docs. 5, 9.) The court heard oral argument on August 3, 2022 and took the matter under advisement at that time.

## Legal Standard

In ruling on a motion to dismiss, the court accepts as true the allegations of the complaint and draws all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page42 of 62

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page43 of 62

<u>Analysis</u>

Plaintiff brings claims under 42 U.S.C. § 1983 for deprivation of its protected constitutional rights, a claim under the Declaratory Judgment Act, 28 U.S.C. § 2202, claims under the Vermont Constitution, and claims without a specified federal or state cause of action.

Defendants seek dismissal of the federal constitutional claims on grounds of ripeness. They invoke the "final-decision rule." In their view, Plaintiff has never "submitted to the DRB a complete application to develop its property or to modify its Habitat Block designation since the amended LDRs took effect." (Doc. 4 at 5.) According to Defendants, in the absence of such a submission, "the application of the LDRs to Plaintiff's property is presently unclear: the LDRs give the DRB substantial discretion to allow development on Plaintiff's property." (*Id.*) Defendants argue that Plaintiff's claims of unconstitutional taking, violation of due process, equal protection, and reverse spot zoning should be dismissed on prudential ripeness grounds.

Plaintiff responds that the City Council and the DRB have already rejected its proposal to develop the property when the council members rejected its proposal under the IZ procedures in November 2018. In Plaintiff's view, its "facial" challenges to the LDRs are already ripe because Defendants have conducted a "physical invasion" of its property and the LDRs prevent it from developing property due to the designation of portions of the acreage as "Habitat Blocks" or "Habitat Corridors." (*See* Doc. 5 at 19.)

## I. Taking Claim

In Count One, Plaintiff alleges that the amended LDRs permit the designation of Habitat Blocks and increase the buffer zones around wetlands from 50 to 100 feet, both of which impose restrictions on Plaintiff's use of its property for which it has not received compensation as required by both the United States and Vermont Constitutions. Plaintiff alleges that it cannot

fence the property to exclude human trespassers or "animals that are to inhabit the land designated as a 'Habitat Block.'" (Doc. 1 ¶ 116.) Plaintiff alleges that it purchased the land for development purposes and that the amended LDRs defeat this legitimate plan. In addition, Plaintiff decries the use of "Habitat Blocks" as "a guise to allow anti-property rights advocates to prevent further development" at the behest of "a small group of private citizens" in violation of the broader public interest. (*Id.* ¶ 118.)

### A. Ripeness Requirements for Federal Takings Claims

The ripening of fruit and vegetables has long provided a metaphor for life's passages. William Shakespeare, *King Lear*, act 5, sc. 2, 12 ("Ripeness is all"); John Keats, *To Autumn* ("And fill all fruit with ripeness to the core."). The fundamental issue is "whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties." 15 Moore's Fed. Prac.– Civil § 101.70.

Federal jurisdiction is limited to resolving cases and controversies. U.S. Const. art. III. § 2. Ripeness doctrine requires courts to consider whether it is premature to decide that the parties have a live dispute that satisfies this constitutional standard. "A claim is not ripe if it depends upon 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). "The doctrine's major purpose is to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

Federal courts have long recognized that a decision about ripeness has both a constitutional and a prudential dimension. *Reno v. Cath. Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993) ("[The] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." (collecting cases)). Recent decisions of the Supreme Court have cast doubt on the viability of the prudential ripeness doctrine. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 128 & n.3 (2014) (prudential standing); *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 167 (2014).

A federal court's concern about adjudicating a case before it is ripe is "especially pronounced in the land-use context." *Vill. Green at Sayville, LLC v. Town of Islip,* 43 F.4th 287, 293 (2d Cir. 2022). There are several reasons for the prominence of the ripeness doctrine in these cases. One is that whether a taking has occurred depends upon factors such as "the economic impact of the state's actions and its interference with investment-backed expectations." *Kurtz v. Verizon N.Y., Inc.,* 758 F.3d 506, 512 (2d Cir. 2014), *abrogated on other ground by Knick v. Twp. of Scott, Pa.,* 139 S. Ct. 2162 (2019)). A second reason is that after review of an application, a municipal zoning board may remove an obstacle to a proposed development through discretionary decision-making. When, as here, the case concerns judicial review of another branch of government, the ripeness requirement reduces the risk of interference in the executive or legislative functions. If judicial review is later appropriate, the court may be better informed on a complete record after the zoning board issues a final decision. *See id.*

Because of the importance of ripeness in constitutional takings challenges to zoning regulations, courts must apply the final-decision rule regardless of whether ripeness is described as jurisdictional or prudential. *See Vill. Green at Sayville, LLC* 43 F.4th at 293–94; *see also Pakdel v. City & Cnty. of San Francisco, Cal.,* 141 S. Ct. 2226, 2228, 2230 (2021) (per curiam)

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page46 of 62

(discussing final decision rule for takings challenges without differentiating between prudential or constitutional ripeness). This rule asks whether the "government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Vill. Green at Sayville, LLC,* 43 F.4th at 294 (internal quotations omitted). While the requirement is "relatively modest[,]" a plaintiff "must show. . . that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230 (quoting *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 739 (1997).)

Like most rules, there are exceptions to the rule where a property owner's appeal to a zoning board of appeals of request for a variance would be futile or where a policy is facially discriminatory. *Vill. Green at Sayville, LLC,* 43 F.4th at 294. As a result, the rule cannot be "mechanically applied." *Id.* (internal quotation marks omitted).

With these general principles in mind, the court begins by reviewing the arguments and legal positions of both sides.

### B. No Plausible Allegation of a Physical Taking

Plaintiff seeks to define the taking here as a physical taking. According to Plaintiff, the amended LDRs "take[] away [its] rights to possess, control and dispose of its property." (Doc. 5 at 20.) Plaintiff also describes its challenge as "facial," meaning that the LDRs result in a taking of its property rights regardless of how the DRB may apply them to a particular proposal. (*See id.* at 14.) For this reason, Plaintiff contends that the court does not need to wait for a final decision from the DRB and instead should strike down the amended LDRs as violating the Fifth Amendment now because it is unconstitutional under any interpretation by the zoning authorities.

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page47 of 62

In the court's view, the complaint contains no plausible allegation of a physical taking.

*See Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 537 (2005) ("The paradigmatic taking requiring

just compensation is a direct government appropriation or physical invasion of private

property"). Examples of physical takings include the forced installation of utility equipment,

*Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982), permanent flooding due

to construction of a dam, *Pumpelly v. Green Bay Co.,* 80 U.S. 166 (1871), seizure of a mine

during wartime, *United States v. Pewee Coal Co.,* 341 U.S. 114 (1951), and entry of union

representatives, *Cedar Point Nursery v. Hassid,* 141 S. Ct. 2063 (2021). As these examples

suggest, a physical taking is "relatively rare" and "easily identified." *Tahoe-Sierra Pres. Council,*

*Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002). In *Yee v. City of Escondido, Cal.,* for

example, the Supreme Court rejected the property owner's claim that rent restrictions amounted

to a physical invasion of the owner's rights, explaining that "[t]he government effects a physical

taking only where it *requires* the landowner to submit to the physical occupation of his land."

503 U.S. 519, 527 (1992).

Plaintiff alleges no physical entry or occupation of its land. Plaintiff also does not allege

that the amended LDRs require the landowner to submit to the physical occupation of its land.[5]

---

[5] According to Plaintiff, it has suffered a physical taking because it cannot build a fence to exclude people or animals from entering its property, meaning people and animals are physically occupying its land. (Doc. 5 at 20 (citing Doc. 1 ¶¶ 18–20, 116).) But the amended LDRs contain an explicit exemption for fencing. *Cf. Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 94 (2d Cir. 1992), *abrogated on other grounds by Knick*, 139 S. Ct. at 2169 (noting plaintiff could possibly exclude deer using a fence). Section 12.04(G) explains that certain uses of property designated as a "Habitat Block" do not require application and review by the Land Development Board. One of those is the uses and activities listed in Section 12.01(C). 2022 LDRs § 12.04(G)(3). Section 12.01(C) explicitly permits the construction of fences that are "lower than 4 feet and that have at least 16 inches of clearance between the lowest horizontal part of the fence and the ground," subject to the portion of the LDRs further regulating fences. 2022 LDRs § 12.01(C)(1). Plus, Plaintiff "retains the right to exclude any persons from the land, perhaps by posting 'No Trespassing' signs." *Southview Assocs., Ltd.*, 980 F.2d at 94. The limits

14

Instead, the complaint alleges that the LDRs restrict its planned development and include restrictions such as a prohibition on fencing Habitat Blocks. These are conventional grounds for claims of regulatory taking and inverse condemnation. They do not amount to a physical taking.

### C.    No Plausible Allegation of a Deprivation of All Economically Beneficial Use of the Property

There is a second exception to the rule that takings claims are not ripe unless the zoning board issues a final decision. These are cases in which the regulation is both confiscatory and certain in its application such that a court may proceed directly to the takings issue before a final decision. In *Lucas v. South Carolina Coastal Council*, for example, state legislation barred any development of the plaintiff's residential lots on a barrier island. 505 U.S. 1003, 1008–09 (1992). The Supreme Court held that such a "total deprivation of beneficial use" gave rise to a takings claim that was not subject to the final decision rule. *Id.* at 1017, 1019. The Supreme Court reached similar decisions in *Suitum*, 520 U.S. at 739 ("The demand for finality is satisfied by [property owner's] claim, however, there being no question here about how the regulations at issue apply to the particular land in question." (cleaned up) and *Pakdel*, 141 S. Ct. at 2230 ("In this case, there is no question about the city's position . . . .").

In this case, there is considerable uncertainty about how South Burlington will apply the "Habitat Block" provisions of the amended LDRs. The LDRs include provisions for variance and for adjustments of the location and boundaries of the Habitat Blocks. Having read the complaint and reviewed the LDRs, the court has no prediction about how Plaintiff's application may fare— in large part because Plaintiff has not submitted an application directed to the amended LDRs. Both the City Council's explanation for its denial of Plaintiff's sketch plan and the DRB's

---

on fencing provides a good example of an issue that will be far better developed after submission of an application to the DRB.

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page48 of 62

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page49 of 62

explanation for denying the same support this conclusion. For example, the City Council's

November 8, 2021 denial of its sketch plan explains:

> Under the draft [Land Development Regulations], development is generally
> prohibited on lands within a Habitat Block. The application does not include any
> information regarding the location of this overlay district, but it is apparent that the
> proposed development includes several buildings and associated infrastructure
> within the proposed Habitat Block Overlay district.

(Doc. 5-2 at 4.) This does not say that Plaintiff may not develop the land at all or that it may not

develop in the designated "Habitat Block." Instead, it states that Plaintiff's application included

development within a "Habitat Block" and that Plaintiff did not attempt to comply with the draft

LDRs. The City Council went on to note the number of unknowns presented by Plaintiff's sketch

plan. (*Id.* at 5). The number of unanswered questions that the City Council identified means

Plaintiff has not shown that "'there [is] no question . . . about how the 'regulations at issue apply

to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230 (quoting *Suitum*, 520 U.S. at 739).

The DRB's denial identified many of the same uncertainties. The DRB explained that

"significant modifications to the plan are necessary in order to meet the draft regulations" and

that Plaintiff could "return with a revised sketch under the Draft LDRs." (Doc. 5-3 at 5.) Like the

above, the court cannot say as a matter of law that no questions remain as to how the amended

LDRs would apply to Plaintiff's proposal.

The court also finds that none of the exceptions to the final-decision rule apply here. That

is because the amended LDRs explained that the goal of the Habitat Block Overlay District is to

"to avoid undue adverse effects from development on these resources, promote the natural

succession of vegetated areas of native vegetation in order to support wildlife habitat and

movement, promote carbon sequestration, filter air, and increase infiltration and base flows in the

City's streams and Lake Champlain." 2022 LDRs § 12.04(A). To accomplish this end, the

regulations create an overlay map that identifies the "Habitat Blocks." The blocks can be

16

modified through minor boundary adjustments, exchanges of land within a parcel, and other adjustments. The blocks must be left in an "undisturbed, naturally vegetated condition." Tree clearing, lawns, and encroachment by structures are prohibited. The regulations provide similar protection and modifications for "Habitat Connectors" which are 150 foot wide strips between "Habitat Blocks."

As in many regulatory takings cases, the critical question is how much has the property owner actually lost? This question cannot be answered in the abstract in this case. The identification of a "Habitat Block" does not foreclose all opportunities for development. It limits the use of a portion of the parcel. Here, the DRB estimated that approximately 43 acres of Plaintiff's 113.8-acre parcel falls within a Habitat Block. (Doc. 5-3 at 2, 4.) The LDRs anticipate that parcels that include "Habitat Blocks" or "Habitat Connectors" will be developed with limitations to protect wildlife. It is possible that the "Habitat Block" located on Plaintiff's property may preclude any commercially viable development plan. Or the "Habitat Block" may be no more than one consideration among others in a relatively flexible planning process. Or the owner's needs may be met through a land exchange or boundary adjustment reached through agreement with the zoning authority. But that is just it—the court does not yet know. In the absence of a concrete plan, submitted to the DRB and a final decision from the DRB, it is not possible to tell how far the regulations encroach on the Plaintiff's right to develop its property. With these possibilities, Plaintiff has not demonstrated that an appropriate application would be futile. *Vill. Green at Sayville, LLC,* 43 F.4th at 294.

The same considerations apply to the increase in the wetland buffer zone. Wetlands have long received protection. Increasing this protection may prevent development or it may have no practical impact.

17

### D.     Facial or As-Applied Challenge

Plaintiff seeks to avoid the application of the ripeness requirement by characterizing its claim as a facial challenge to any application of the LDRs to private property. In fact, Plaintiff makes both a facial and an as-applied challenge. (*See* Doc. 5 at 14.)  The facial challenge is based on a claim that the enactment of the LDRs was itself a constitutional violation which was complete when the LDRs came into effect. Plaintiff takes a pessimistic view of its prospects before the DRB. At the oral argument on this motion, Plaintiff explained that "on the question of de facto finality, it is de facto final. They told us we can't build in a habitat block. So, no matter what we propose, it's going to be rejected." (Tr. of Hr'g Aug. 3, 2022, Doc. 12 at 16:10–13; *see also* Doc. 5 at 2 (similar).) The as-applied claim concerns the rejection of Plaintiff's proposed development under the IZ bylaws. (Doc. 12 at 27:4–10.)

The court concludes that Plaintiff is jumping the gun. Neither the City Council in applying the IZ zoning procedures nor the DRB in reviewing Plaintiff's sketch plan have ruled in any comprehensive way on Plaintiff's proposal under the LDRs now in effect. Further, these regulations indicate that the DRB may exercise discretionary authority in locating and enforcing the "Habitat Blocks" on undeveloped parcels. The final-decision rule prevents courts from striking down a zoning provision as unconstitutional without a full understanding how the provision functioned in the particular case. So too here.

### E.     Application of the Final-Decision Rule

Defendants seek dismissal of Count One on ripeness grounds because South Burlington has never made a final decision about Plaintiff's plans to develop the parcel. (Doc. 4 at 11 (citing *Pakdel*, 141 S. Ct. at 2230 and *Suitum*, 520 U.S. at 739).) Defendants contend that without a

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page52 of 62

request for a permit or variance, "it is entirely speculative how [municipal] discretion would be exercised with respect to Plaintiff's parcel." (*Id.*)

Plaintiff characterizes the issue as one of exhaustion of remedies. (Doc. 5 at 4–12.) Relying on *Knick* and *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496 (1982), Plaintiff argues that its case became ripe as soon as South Burlington adopted the LDRs. (Doc. 5 at 4–5.)

It is true that, prior to the Supreme Court's decision in *Knick*, property owners aggrieved by a governmental taking were required to exhaust administrative and state court compensation remedies before filing a federal lawsuit. A constitutional tort claim under 42 U.S.C. § 1983 was the last stop on the line and frequently subject to res judicata for issues already litigated in state court. Plaintiff relies on *Knick* as a basis for seeking judicial relief before receiving a final decision on a specific development proposal.

But exhaustion of remedies and ripeness are not the same. It is now well-settled law that there is no exhaustion requirement in § 1983 cases (except for statutory exceptions not relevant here). *Patsy*, 457 U.S. at 516 ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."); *Heck v. Humphrey*, 512 U.S. 477 (1994). As plaintiff observes, in *Knick*, the Supreme Court extended this principle to takings claims, overruling that portion of its decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *Knick*, 139 S. Ct. at 2167, 2169–70. Federal takings claims asserted under § 1983 are no longer subject to a requirement that plaintiffs file first for compensation in state court. *See id.*

Demolishing the straw man of exhaustion of remedies does not also remove the requirement of ripeness. The constitutional requirement of ripeness continues to apply to all

19

federal cases, including § 1983 claims. In regulatory taking cases, the ripeness requirement asks whether the government "has reached a 'final' decision. After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." *Pakdel*, 141 S. Ct. at 2228 (internal citation omitted).

Although the *Williamson County* holding on exhaustion of remedies was overruled by the *Knick* decision, it remains the leading case on ripeness in land use disputes. It continues to require a final decision regarding the application of the regulations to the property at issue. *See Vill. Green at Sayville,* 43 F.4th at 287 ("Accordingly, federal courts adhere to specific ripeness requirements applicable to land use disputes. *Williamson County* is the foundational case." (cleaned up)). In cases in which the local planning board retains discretion in fashioning its ruling on a zoning application, the final decision rule remains good law. The *Suitum* decision recognizes the continuing viability of Supreme Court cases that found claims unripe when property owners had not submitted plans, *Agins v. City of Tiburon*, 447 U.S. 255 (1980); had failed to request a variance, *Hodel v. Virginia Surface Mining & Reclamation Ass'n., Inc.*, 452 U.S. 264 (1981); or additional factors remained to be presented to the municipal decisionmaker that might allow the project to proceed, *Williamson County* 473 U.S. 172; *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986). *See Suitum*, 520 U.S. at 735–39.

The ripeness question in this case is similar to that faced by the courts in *Suitum* and its predecessors. Has there been a physical invasion of the property by the municipality for which compensation is due as a matter of course? No. While there are zoning restrictions on Plaintiff's use of its property, there is no claim that municipal workers have built a road or in some other way invaded the property. Do the new regulations permanently remove all value from the property so as to amount to a *per se* taking? No again. The LDRs anticipate that open land in

20

South Burlington, including parcels containing "Habitat Blocks," may be developed subject to restrictions. Under these circumstances, a final decision by the zoning agency remains a prerequisite for a constitutional takings claim. *See Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 352–54 (2d Cir. 2005).[6]

## II. Other Federal Constitutional Claims

Federal courts have also applied the final decision rule to claims that zoning regulations violate constitutional guarantees of substantive due process and equal protection.

Starting with Plaintiff's claims under the Due Process Clause, the same final-decision rule means that this claim, too, is not yet ripe. In *Southview Associates, Ltd.,* the Second Circuit held that a substantive due process challenge to Vermont's Act 250, 10 V.S.A. § 6001 *et seq.*, limiting development across the state was not yet ripe. 980 F.2d at 99. In that case, the developer challenged the protection of a winter deeryard as violating principles of due process because it was arbitrary and capricious and because it was the equivalent of a taking by eminent domain,

---

[6] Decisions concerning the ripeness of takings claims may address only jurisdictional ripeness or may also apply prudential ripeness concerns. In *Williamson County*, for example, the Supreme Court concluded that the factors governing what constitutes a taking "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." 473 U.S. at 191. This sounds like constitutional ripeness since it is impossible—not just unwise or inefficient—to evaluate the plaintiff's claim without a final decision. In a more recent case, *Murphy v. New Milford Zoning Comm'n*, the court based its decision on both aspects of the doctrine, explaining that "[the two-prong ripeness analysis] in some ways tracks both the doctrine's Article III and prudential underpinnings." 402 F.3d at 347. With serious doubt now cast on the viability of the prudential prong, this court relies on the jurisdictional basis for ripeness. The case is not ripe because in the words of *Williamson*, we simply do not know whether the plaintiff will be hampered and constrained in its development plans at a level sufficient to support a takings claim. That is a concern about jurisdictional ripeness, specifically whether there will later be a real dispute in the case at all. To the extent it remains alive, the prudential concern over the inadequate factual record at this time and the entanglement of the court in municipal government provide subsidiary support for dismissal.

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page55 of 62

making it beyond the limits of the state's police power. *Id.* at 96. The panel, chaired by Chief Judge Oakes, held in relevant part that the due process (and a related equal protection claim) were subject to *Williamson* principles of exhaustion and ripeness. *See id.* at 97, 99, 103 n.10. As we have seen, the exhaustion requirement is no longer good law. But the ripeness requirement remains very much alive, and that portion of *Southview* is binding authority today.

*Southview* requires a developer who seeks to strike down a state land use law to obtain a final ruling from the regulator. Without such a decision, "a court cannot determine adequately the economic loss—a central factor in inquiry—occasioned by the application of the regulatory restrictions." *Id.* at 96. As *Southview* makes clear, this requirement applies to substantive due process claims that a statute is arbitrary and capricious or exceeds the legislative authority in the same manner that it applies to the Fifth Amendment taking claim. *Id.* at 99; *see also Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988) ("Our decisions in this area have also clarified that we will apply the same ripeness standards to equal protection and substantive due process claims."); *Unity Ventures v. Cnty. of Lake*, 841 F.2d 770, 776 (7th Cir. 1988) (finding plaintiff's equal protection and due process claims based on application for a sewer connection were not yet ripe).

Turning to Plaintiff's claim under the Equal Protection Clause, it is also not yet ripe. Plaintiff alleges that South Burlington's amended LDRs treated its land differently than others similarly situated in the town of South Burlington. (Doc. 1 ¶¶ 142–153.) This is based on Plaintiff's contention that it should have received a different rating in the Open Space Interim Zoning Committee's final report (*Id.* ¶¶ 145–146.) In addition, Plaintiff alleges that it was treated differently than landowners with already developed land, that it should have been treated the

Case 23-218, Document 13-2, 03/08/2023, 3479796, Page56 of 62

same as landowners with less than four acres, and there was no rational basis for treating it differently than UVM. (*Id.* ¶¶ 149–152.)

At base, these allegations depend on how the LDRs are applied to Plaintiff's land. Like Plaintiff's due process claim, its equal protection claim is subject to the same final-decision requirement. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir. 2002) (affirming district court that *Williamson County* finality rule applies to equal protection claims in the context of land use challenges and affirming dismissal for lack of ripeness), *abrogated on other grounds by Knick*, 139 S. Ct. at 2169; *Nenninger v. Village of Port Jefferson*, 509 F. App'x 36, 38–39 (2d Cir. 2013) (summary order) (affirming dismissal of equal protection and due process claims relating to a subdivision proposal as unripe); *see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir. 1990) ("In evaluating the ripeness of . . . equal protection claims arising out of the application of land use regulations, [courts] employ the same final decision requirement that applies to regulatory taking claims."). Therefore, the court dismisses this claim as unripe.

## III. Remaining Claims

Having dismissed all of Plaintiff's claims that explicitly involve a federal-law claim, the court turns to the remaining causes of action. Where a federal court dismisses the only federal-law causes of action, it may, in its discretion, decline to continue to exercise supplemental jurisdiction over the remaining state-law causes of action. 28 U.S.C. § 1367(c)(4); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). In making that discretionary decision, a district court must balance judicial economy, convenience, fairness, and comity. *Id.* "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*

(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

The court turns first to Plaintiff's claims under the Vermont Constitution, including the taking claim in Count One, due process claims in Count Two, and Common Benefits Clause claim in Count Three. All three are state-law causes of action. Here, the court will dismiss the federal-law claims at the motion to dismiss stage. The parties have not yet begun discovery. Therefore, the court declines to exercise supplemental jurisdiction and dismisses the three state law claims, all without prejudice.

Turning next to Count Seven for illegal reverse spot zoning, Plaintiff has not articulated whether this claim is under federal law or Vermont law. To the extent it is brought under Vermont state law, the court declines to exercise supplemental jurisdiction for the same reasons just articulated. *See, e.g.*, *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1235 (10th Cir. 2021). To the extent it is brought under federal law, it is not ripe for the same reasons already explained.

Turning finally to Count Five, Plaintiff seeks declaratory judgment that the South Burlington City Council lacked the statutory authority to designate a portion of its land as a Habitat Block. (Doc. 1 ¶¶ 155–156.) According to Plaintiff, "the state statute creating forest blocks did not authorize the City to create 'Habitat Blocks' for reasons different from the reasoning for forming Forest Blocks." (*Id.* ¶ 155.)

Even though Plaintiff alleges this claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that alone does not provide a federal ingredient sufficient for federal question jurisdiction. That is because Plaintiff requests the court to grant declaratory judgment on a matter of state law, not federal law. An action under the Declaratory Judgment Act alone does not create

the requisite federal ingredient. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–73 (1950) (explaining that the Declaratory Judgment Act does not expand the subject matter jurisdiction of federal courts); *Freeman v. Burlington Broad., Inc.*, 204 F.3d 311, 318 n.4 (2d Cir. 2000) (similar). As a result, this claim falls under the court's supplemental jurisdiction. Like the other non-federal claims, the court declines to exercise its supplemental jurisdiction over this claim and dismisses it.

## Conclusion

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Doc. 4). The dismissal is without prejudice.

Dated at Rutland, in the District of Vermont, this 27th day of January, 2023.

Geoffrey W. Crawford, Chief Judge
United States District Court

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

835 HINESBURG ROAD, LLC,    )
    Plaintiff    )
    )
    v.    )    Case No. 5:22-cv-58
    )
CITY OF SOUTH BURLINGTON,    )
SOUTH BURLINGTON CITY COUNCIL,    )
MEAGHAN EMERY, TIMOTHY BARRITT,    )
and HELEN RIEHLE,    )
    Defendants    )

<u>CERTIFICATE OF SERVICE</u>

I, Matthew B. Byrne, Esq., attorney for Plaintiff 835 Hinesburg Road, LLC, certify that, on February 21, 2023, I caused to be served Plaintiff's Notice of Appeal through the CM/ECF system on the following individuals:

Pietro J. Lynn, Esq.    Colin K. McNeil, Esq.
Aliza A. Harrigan, Esq.    Amanda S.E. Lafferty, Esq.
Lynn, Lynn, Blackman & Manitsky, P.C.    City of South Burlington
76 St. Paul Street, Suite 400    575 Dorset Street
Burlington, VT 05401    South Burlington, VT 05403
plynn@lynnlawvt.com
aharrigan@lynnlawvt.com

Dated:    February 21, 2023

    /s/ Matthew B. Byrne
    Matthew B. Byrne, Esq.
    Gravel & Shea PC
    76 St. Paul Street, 7th Floor, P.O. Box 369
    Burlington, VT 05402-0369
    (802) 658-0220
    mbyrne@gravelshea.com
    Attorneys For Plaintiff

gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369

CLOSED

# U.S. District Court
## District of Vermont (Rutland)
## CIVIL DOCKET FOR CASE #: 5:22-cv-00058-gwc

835 Hinesburg Road, LLC v. City of South Burlington et al
Assigned to: Chief Judge Geoffrey W. Crawford
Cause: 28:1331(a) Fed. Question: Real Property

Date Filed: 02/24/2022
Date Terminated: 01/27/2023
Jury Demand: Plaintiff
Nature of Suit: 210 Condemnation
Jurisdiction: Federal Question

**Plaintiff**

**835 Hinesburg Road, LLC**                   represented by   **Matthew B. Byrne , Esq.**
Gravel & Shea PC
76 St. Paul Street, 7th Floor
P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
Email: mbyrne@gravelshea.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of South Burlington**                   represented by   **Aliza A. Harrigan , Esq.**
Lynn Lynn Blackman & Manitsky, P.C.
76 St. Paul Street
Suite 400
Burlington, VT 05401
(802) 860-1500
Fax: (802) 860-1580
Email: aharrigan@lynnlawvt.com
*ATTORNEY TO BE NOTICED*

**Pietro J. Lynn , Esq.**
Lynn, Lynn, Blackman & Manitsky, P.C.
76 St. Paul Street, Suite 400
Burlington, VT 05401
(802) 860-1500
Fax: (802) 860-1580
Email: plynn@lynnlawvt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**South Burlington City Council**              represented by   **Aliza A. Harrigan , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

|  | **Pietro J. Lynn , Esq.** |
|---|---|
|  | (See above for address) |
|  | *ATTORNEY TO BE NOTICED* |

**Defendant**

| **Meaghan Emery** | represented by | **Aliza A. Harrigan , Esq.** |
|---|---|---|
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |
|  |  | **Pietro J. Lynn , Esq.** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Defendant**

| **Timothy Barritt** | represented by | **Aliza A. Harrigan , Esq.** |
|---|---|---|
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |
|  |  | **Pietro J. Lynn , Esq.** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Defendant**

| **Helen Riehle** | represented by | **Aliza A. Harrigan , Esq.** |
|---|---|---|
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |
|  |  | **Pietro J. Lynn , Esq.** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/24/2022 | 1 | COMPLAINT against Timothy Barritt, Meaghan Emery, Helen Riehle, City of South Burlington, South Burlington City Council filed by 835 Hinesburg Road, LLC. (Attachments: # 1 Civil Cover Sheet) (esm) (Entered: 02/24/2022) |
| 03/14/2022 | 2 | ACKNOWLEDGMENT/ACCEPTANCE OF SERVICE. All Defendants answers due 4/25/2022.(Byrne, Matthew) Text clarified on 3/16/2022 (jlh). (Entered: 03/14/2022) |
| 04/25/2022 | 3 | NOTICE OF APPEARANCE by Pietro J. Lynn, Esq on behalf of Timothy Barritt, Meaghan Emery, Helen Riehle, City of South Burlington, South Burlington City Council. (Lynn, Pietro) (Entered: 04/25/2022) |
| 04/25/2022 | 4 | MOTION to Dismiss 1 COMPLAINT filed by Timothy Barritt, Meaghan Emery, Helen Riehle, City of South Burlington, South Burlington City Council. (Lynn, Pietro) Link added on 4/26/2022 (pjl). (Entered: 04/25/2022) |
| 05/25/2022 | 5 | RESPONSE in Opposition re 4 MOTION to Dismiss filed by 835 Hinesburg Road, LLC. (Attachments: # 1 Appendix A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Certificate of Service) (Byrne, Matthew) (Entered: 05/25/2022) |
| 06/03/2022 | 6 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 4 MOTION to Dismiss filed by Timothy Barritt, Meaghan Emery, Helen Riehle, City of South |

| | | |
|---|---|---|
| | | Burlington, South Burlington City Council.(Lynn, Pietro) Text modified on 6/3/2022 (esm). (Entered: 06/03/2022) |
| 06/06/2022 | 7 | ORDER granting 6 STIPULATED MOTION for Extension of Time to File Response/Reply as to 4 MOTION to Dismiss. Time extended to June 22, 2022. Signed by Chief Judge Geoffrey W. Crawford on 6/6/2022. (This is a text-only Order.) (jal) (Entered: 06/06/2022) |
| 06/16/2022 | 8 | NOTICE of Hearing re: 4 MOTION to Dismiss. Motion Hearing set for 8/3/2022 at 2:30 PM in Rutland Courtroom before Chief Judge Geoffrey W. Crawford. (pjl) (Entered: 06/16/2022) |
| 06/22/2022 | 9 | REPLY to Response to 4 MOTION to Dismiss 1 COMPLAINT filed by Timothy Barritt, Meaghan Emery, Helen Riehle, City of South Burlington, South Burlington City Council. (Attachments: # 1 Exhibit A)(Lynn, Pietro) Docket text and attachment text modified on 6/23/2022 (esm). (Entered: 06/22/2022) |
| 07/27/2022 | 10 | NOTICE OF APPEARANCE by Aliza A. Harrigan on behalf of Timothy Barritt, Meaghan Emery, Helen Riehle, City of South Burlington, South Burlington City Council.(Harrigan, Aliza) (Entered: 07/27/2022) |
| 08/03/2022 | 11 | MINUTE ENTRY for proceedings held before Chief Judge Geoffrey W. Crawford: Motion Hearing held on 8/3/2022 re: 4 MOTION to Dismiss. M. Byrne, Esq. present for plaintiff. A. Harrigan, Esq. present for defendants. Court makes inquiries and counsel make statements re: naming of defendants and pending motion. ORDERED: 4 MOTION to Dismiss is taken under advisement. (Court Reporter: Sunnie Donath) (pjl) (Entered: 08/03/2022) |
| 10/04/2022 | 12 | TRANSCRIPT of Motion hearing held on 8/3/2022, before Judge Geoffrey W. Crawford. Court Reporter/Transcriber Sunnie Donath, telephone number (802) 747-3140. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/28/2022. Redacted Transcript Deadline set for 11/7/2022. Release of Transcript Restriction set for 1/6/2023. (esm) (Entered: 10/04/2022) |
| 01/27/2023 | 13 | ORDER granting 4 Motion to Dismiss without prejudice. Signed by Chief Judge Geoffrey W. Crawford on 1/27/2023. (esm) (Entered: 01/27/2023) |
| 01/27/2023 | 14 | JUDGMENT - the case is DISMISSED without prejudice. Signed by Deputy Clerk on 1/27/2023. (Attachments: # 1 Notice to Litigants (appeal period expires 2/27/2023)) (esm) (Entered: 01/27/2023) |
| 02/21/2023 | 15 | NOTICE OF APPEAL as to 13 Order on Motion to Dismiss, 14 Judgment by 835 Hinesburg Road, LLC (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Certificate of Service)(Byrne, Matthew) (Entered: 02/21/2023) |
| 02/21/2023 | 16 | USCA Appeal Fees received $ 505.00 PAID. Receipt No. 366 re 15 Notice of Appeal filed by 835 Hinesburg Road, LLC. (gmg) (Entered: 02/21/2023) |